**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MATTHEW EDWARDS<br>7808 Louise Lane<br>Wyndmoor, PA 19038 | CIVIL ACTION |
| Plaintiff, | No.:___________________ |
| v. | **JURY TRIAL DEMANDED** |
| THE PNC FINANCIAL SERVICES GROUP, INC. d/b/a PNC BANK<br>The Tower at PNC Plaza<br>300 Fifth Avenue<br>Pittsburgh, PA 15222 | |
| Defendant. | |

**CIVIL ACTION COMPLAINT**

Matthew Edwards (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by The PNC Financial Services Group, Inc. d/b/a PNC Bank (hereinafter referred to as "Defendant") of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. § 2000e et seq.), the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101 et seq.), the Pennsylvania Human Relations Act ("PHRA" - 43 P.S. Section 951 et seq.), and Philadelphia Fair Practices Ordinance ("PFPO" - Phila. Code Chapter 9-1100 et seq.).[1]

[1] Plaintiff intends to amend his instant Complaint to include claims arising under the PHRA/PFPO on or about April 2, 2026, once his administrative remedies as to those claims are fully exhausted with the PHRC/PCHR. Plaintiff's claims arising under the PHRA will mirror the instant Title VII/ADA claims.

2. Plaintiff alleges, *inter alia*, that Defendant showed great disdain and animosity towards his sexual orientation and his serious medical conditions and need for reasonable accommodations. When Plaintiff complained that he was being subjected to blatant and repeated harassment and discrimination because of his sexual orientation, Defendant repeatedly ignored his complaints and then terminated his employment only 2.5 months after returning from ADA leave for pretextual reasons.

3. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

4. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. This Court has supplemental jurisdiction over Plaintiff's state law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as his federal claims asserted herein.

5. This Court may properly assert personal jurisdiction over Defendant because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

6. Pursuant to 28 U.S.C. § 1391(b)(1)-(2), venue is properly laid in this district as a substantial part of the events giving rise to this lawsuit occurred in the Eastern District of Pennsylvania and Defendant is deemed to reside where they are subjected to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

7. On or about April 2, 2026, Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed the Charge with the Pennsylvania Human Relations Commission ("PHRC").

8. On or about July 30, 2026, the EEOC issued Plaintiff a Right-to-Sue letter.

9. Plaintiff has properly exhausted his administrative remedies by timely filing and dual-filing his Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving the EEOC's Right-to-Sue letter.

## PARTIES

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is an adult African American/Black individual, with an address as set forth in the caption.

12. Defendant The PNC Financial Services Group, Inc. d/b/a PNC Bank is a Pennsylvania corporation with a principal place of business as set forth in the caption.

13. Plaintiff's offer letter identifies that he was employed by PNC Bank NA, but almost all other benefits, documents, and his ultimate (proposed) severance agreement identified The PNC Financial Services Group as Plaintiff's employer.

14. Defendant (as an enterprise) is headquartered at the above-captioned address and operates as a banking and financial services company in 27 states and through a network of more than 2,500 branch locations.

15. Defendant as used herein should be construed to include all parent, subsidiary and affiliated entities which may properly be considered Plaintiff's single, joint and/or integrated employers (inclusive of PNC Bank NA and other similar or related entities).

16. At all times relevant herein, Defendant acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

17. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

18. Plaintiff is a gay male (with disabilities).

19. Plaintiff worked for Defendant for about seven (7) years in total, through two (2) separate periods of employment.

20. Initially, Plaintiff was employed for about a year in the 2018-2019 timeframe.

21. Plaintiff's second period of employment was for approximately 5.5 years (the only time period Plaintiff focus on in this lawsuit).

22. Plaintiff was hired (again) on or about October 26, 2020.

23. Plaintiff worked in numerous positions and different locations during his overall tenure.

24. The last location in which Plaintiff worked was at 5726 Baltimore Avenue, Philadelphia, PA 19143 (with a phone number of 215-252-9910). This was known as the "Cobbs Creek" location. Plaintiff was transferred to this location, which was new and opened in 2025. As of the spring of 2025, Plaintiff commenced working at the Cobbs Creek location, but it officially opened in the summer of 2025.

25. Within the Cobbs Creek location, Plaintiff was referred to as a Senior Branch Banker.

26. Some of the relevant management during Plaintiff's last year included: (1) Tyrell Cirino ("Cirino" – VP / Branch Management III); (2) Amanda Kafer ("Kafer" – SVP / Sales Leader II / Regional Manager); and, (3) Travis Branch ("Branch" – Executive VP / Retail Market Manager). In total, Plaintiff was employed at the Cobbs Creek location for approximately eleven (11) months until being involuntarily terminated on or about March 24, 2026.

27. One of Plaintiff's non-management coworkers at Cobbs Creek was Ndeiiva Zorokong ("Zorokong"), who also worked as a Branch Banker.

28. Both Zorokong and Cirino (functioning as Cobbs Creek's Branch Manager) were very homophobic, engaged in insensitive (and offensive) commentary about gay people, and attempted to push religion on Plaintiff.

29. They were upon information and belief Christian from their continual references to Plaintiff about their religion.

30. Zorokong repeatedly expressed discomfort (verbally) with Plaintiff being gay, tried to convince Plaintiff to become Christian (even though Plaintiff already identified as a Christian), and tried to suggest if Plaintiff became religious then he may no longer be gay.

31. Zorokong was so offensive to Plaintiff that, for example, he approached Plaintiff and said: "I had a dream about you and God told me I can tell you. You asked him to deliver you from your gayness and he did."

32. As Plaintiff would later come to learn (discussed more below), Cirino and Zorokong had a relationship or were friendly with one another outside of work.

33. Cirino perpetuated the discriminatory environment by continually discussing Christianity and politics in front of Plaintiff that in many aspects inferred anti-gay and anti-homosexual views.

34. Plaintiff complained to Cirino several times about Zorokong being discriminatory against his sexual orientation, and Plaintiff also complained that he felt Cirino and Zorokong were pushing their religion on him.

35. By the end of the summer (in the July 2025) timeframe, Cirino was being retaliatory towards Plaintiff for his complaints of anti-gay and sexual orientation discrimination. He was abrasive with Plaintiff at times, and he would walk up and help others with lines of customers but not Plaintiff (among other forms of subtle retaliation). None of this mistreatment abated as of late July 2025.

36. Plaintiff suffers from depression, complex PTSD, a panic disorder, and hearing loss (among other health complications). Plaintiff's medical conditions substantially limit his ability to perform major life activities at times, such as focusing, concentrating, and hearing.

37. As of on or about July 30, 2025, Plaintiff commenced an approved medical leave of absence.

38. On or about January 5, 2026, Plaintiff returned to work from the aforesaid approximate five (5) month medical leave of absence. This medical leave of absence was a reasonable accommodation and protected activity under the ADA. *See e.g. Daniel v. T-Mobile USA, Inc.*, No. 17-4873, 2019 U.S. Dist. LEXIS 80003, at *36 (E.D. Pa. 2019) (explaining medical leave is often a "reasonable accommodation" under the ADA and explaining that even up to a 6-month medical leave can be a reasonable accommodation); *Shannon v. City of Phila.*, No. 98-5277, 1999 U.S. Dist. LEXIS 18089, at *22 (E.D. Pa. 1999) (denying summary judgment and explaining a medical leave for 3-6 months of time is often a "reasonable accommodation").

39. Plaintiff was terminated from his employment approximately 2.5 months following his return from medical leave.

40. During these 2.5 months, Plaintiff was subjected to a very hostile work environment.

41. Plaintiff was still being discriminated against and harassed by both Cirino and Zorokong via their homophobic comments and due to Plaintiff's health problems. Some examples of the ongoing harassment (by Zorokong) included: (1) continued comments about religion in front of Plaintiff insinuating gayness is a sin; (2) commenting that another gay (female) coworker, Bank Teller Imari Tull ("Tull"), should not "show her lesbianism in front of customers;" (3) telling Plaintiff he has "the lower half of a woman" (in reference to Plaintiff's body); and, (4) calling Plaintiff bionic and joking about Plaintiff being unable to hear because he wore a hearing aide. These are only some examples of many.

42. Moreover, Cirino was present during many offensive comments and either laughed or smiled instead of resolving Plaintiff's concerns. Cirino also made derogatory references to the LGBT community or would say that phrase in a disgusted manner.

43. Plaintiff would later learn that both Cirino and Zorokong were saying Plaintiff being around them was a form of sexual harassment (and they made these types of suggestions to others), even using innocuous conversation with Plaintiff to insinuate he was sexually harassing them.

44. Plaintiff had repeatedly complained to Cirino to intervene (as he was the highest manager at the Cobbs Creek branch in charge of Defendant), sharing that what was going on was exacerbating Plaintiff's mental health.

45. Plaintiff escalated his concerns during an HR investigation (in the January 2026 timeframe) of everything his was experiencing, *yet Plaintiff was placed on a final warning* for his reactions to ongoing discrimination. Plaintiff felt this was retaliatory.

46. Plaintiff was told Cirino was given some type of discipline (possibly a final warning) for mishandling or not properly escalating discrimination complaints.

47. By on or about late January 2026, Cirino pulled Plaintiff away from a customer and angrily admonished Plaintiff saying that he got a write up for not reporting internal employee problems and said: "It is all your fault for bringing your lifestyle into work." Cirino also claimed that he was told not to preach in the lobby and he angrily yelled at Plaintiff that he could no longer fulfill his calling by "winning souls for Christ" because of Plaintiff.

48. By in or around February 2026, Plaintiff had learned that Cirino and Zorokong were close friends, spending time together near weekly, going together to church, social events, and were even in some type of business venture together. This explained why they ganged upon Plaintiff discriminatorily, why Cirino never resolved Plaintiff's concerns (perpetuating a hostile work environment), and why he even covered up for Zorokong for lying that a customer had a gun (which Cirino attempted to downplay).

49. During the month of in or around February 2026, Cirino was so overtly hostile towards Plaintiff, he was not helping Plaintiff, giving Plaintiff unfriendly or disgusted looks, and doing anything possible to make Plaintiff's job harder. Zorokong had quit by this point in protest of Cirino being disciplind, but Cirino's mistreatment of Plaintiff was unrelenting.

50. Prior to in or around March 2026 (and Plaintiff's later termination), Plaintiff had complained of discrimination because of his health and sexual orientation to Cirino, human resources, **and** Kafer (their Regional Manager).

51. Cirino's abuse of Plaintiff did not stop, and Kafer did not effectively resolve Plaintiff's concerns (despite Plaintiff complaining of various forms of discrimination and

retaliation to her). Instead, Kafer would use an error by Cirino to justify also getting rid of Plaintiff (as outlined *infra*).

52. On or about March 24, 2026, Plaintiff was informed that he was terminated from his employment by Kafer for misconduct or policy reasons. Plaintiff was informed it was due to the mishandling of a customer engaged in fraud with respect to a $97,000.00 payment.

53. No reasonable person or factfinder ***could possibly*** believe Plaintiff did anything wrong. Here is the actual factual basis regarding the aforesaid $97,000.00 fraudulent transaction:

a. On or about February 13, 2026 (an estimated date due to lack of presence to verify), a customer called requesting $97,000 in cash. Since the amount was above Plaintiff's authority, he directed the request to Cirino.

b. Cirino asked Plaintiff to obtain specific information from the customer. So, Plaintiff obtained the specific information he requested and provided it to Cirino.

c. Another coworker, Senior Branch Banker Shahida Bordley ("Bordley"), and Plaintiff both explained to Cirino that the customer seemed suspicious and advised against engaging in the requested transaction without further verifications and confirmations. Plaintiff had **<u>no</u>** authority to approve the transaction. Plaintiff was not a supervisor, did not approve the transaction, and even went outside the scope of his own role to tell a Cirino (who did not like Plaintiff and was trying to get rid of him). Plaintiff did not suggest that Cirino use his authority to approve the transaction.

d. Cirino ordered cash from Garda for the particular customer saying the PNC motto that he was "customer obsessed." Cirino referred to the Cobbs Creek

location as "my house" and said that "the manager needs to know everything that's going on." Cirino said he approved the transaction, was satisfied, and it was the end of discussion. Cirino continued that "if anyone had a problem with it, they could be 'promoted to customer.'" (Being "promoted to customer" was a euphemism amongst Defendant's employees for getting fired).

e. Cirino left for the morning on or about February 19, 2026 (an estimated date due to the lack of presence to verify). Plaintiff gave Tull the phone number for Defendant's approval line because Cirino was absent. The approval line signed off on the transaction. Plaintiff and Tull then processed the paperwork related to the transaction. Plaintiff and Toll only followed an order of Cirino, their Branch Manager.

f. In the week following the aforesaid customer transaction, corporate management (loss prevention) advised that it was an imposter who engaged in the fraudulent transaction.

54. On or about March 24, 2026, Kafer told Plaintiff that he was terminated for being involved with the $97,000.00 transaction (and to Plaintiff's knowledge, Cirino was also terminated).

55. There is <u>nothing else</u> anyone could have possibly done in Plaintiff's situation, and Plaintiff violated no policies. Plaintiff was a non-supervisor and non-management employee working in a hostile environment on an unjustified final warning and merely processing paperwork for a transaction that was approved, authorized, directed, and mandated by his Branch Manager

that had also been approved remotely by Defendant's approval line. Plaintiff was terminated to get rid of him as a problem under this absurd pretext.

56. Cirino was unprofessional, discriminatory, retaliatory, perpetuated a hostile work environment, and Plaintiff was nothing more than a throw-in termination to feign a basis to get rid of him.

**COUNT I**
**<u>Violations of Title VII</u>**
**([1] Sexual Orientation Discrimination, [2] Hostile Work Environment, and [3] Retaliation)**

57. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

58. Plaintiff was subjected to severe and/or pervasive discrimination and harassment by Cirino and Zorokong because of his sexual orientation.

59. Plaintiff complained to Defendant's management about what he reasonably believed to be discriminatory conduct and a hostile work environment that he was being subjected to because of his sexual orientation.

60. Instead of investigating and/or properly remediating Plaintiff's aforesaid complaints of sexual orientation discrimination, Defendant's management ignored them, left his legitimate concerns unresolved, and subjected him to further hostility and animosity.

61. Following his complaints of sexual orientation discrimination (discussed *supra*), Plaintiff was subjected to increased hostility and antagonism and terminated under completely pretextual circumstances.

62. Plaintiff believes and therefore avers that he was terminated because of his sexual orientation.

63. Plaintiff also believes and therefore avers that he was terminated in retaliation for engaging in protected activity under Title VII.

64. These actions as aforesaid constitute unlawful discrimination, a hostile work environment, and retaliation under Title VII.

**COUNT II**
**Violations of the ADA**
**([1] Actual/Perceived/Record of Disability Discrimination, and [2] Retaliation)**

65. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

66. Plaintiff suffers from qualifying health conditions under the ADA, which affected his ability (at times) to perform some daily life activities (as set forth *supra*).

67. Despite Plaintiff's aforementioned health conditions and limitations, he was still qualified and able to perform the essential duties of his job well with Defendant.

68. Approximately 2.5 months before his termination, Plaintiff took a medical leave of absence, which is a reasonable accommodation under the ADA.

69. Plaintiff's coworkers and/or supervisors made disparaging comments about his disabilities (discussed *supra*).

70. Plaintiff made a good faith complaint to Defendant's management that he was being discriminated against because of his disabilities (discussed *supra*).

71. Plaintiff's actual or perceived disabilities and/or record of impairment was a motivating or determinative factor in Defendant's decision to terminate his employment.

72. Plaintiff also avers that he was terminated in retaliation for engaging in protected activity (requesting/utilizing accommodations and/or making a good faith complaint of disability discrimination) under the ADA.

73. Defendant's actions as aforesaid constitute violations of the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, overtime, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered unlawful employment practices, retaliation, and discrimination at the hands of Defendant until the date of verdict;

B. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount determined by the Court or trier of fact to be appropriate to punish Defendant for their willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including compensatory damages including damages for emotional distress;

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

E. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

F. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
akarpf@karpf-law.com
*Attorneys for Plaintiff*

Dated: October 6, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Matthew Edwards | : | CIVIL ACTION |
| v. | : | |
| | : | |
| The PNC Financial Services Group, Inc. d/b/a PNC Bank | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| 10/6/2026 | [signature] | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Defendants place of business

***RELATED CASE IF ANY:*** Case Number:__________ Judge:__________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

***A. Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:__________

***B. Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):__________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*__________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

[X] Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

[ ] None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

EDWARDS, MATTHEW

**(b)** County of Residence of First Listed Plaintiff: Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

THE PNC FINANCIAL SERVICES GROUP, INC. D/B/A PNC BANK

County of Residence of First Listed Defendant: Allegheny
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [X] 445 Amer. w/Disabilities - mployment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
ADA (42USC12101); Title VII (42USC2000)

Brief description of cause:
Violations of the ADA, Title VII, PFPO and the PHRA.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ____________ DOCKET NUMBER ____________

DATE 10/6/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ________ AMOUNT ________ APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________